UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| In re: ) | |
| ) | |
| RICHARD JAMES COTTRELL, JR., ) | Chapter 7 |
| *Debtor*. ) | |
| ) | 3:21-CV-00121 (SVN) |
| ) | |
| GEORGIA COTTRELL, ) | |
| *Plaintiff-Appellee*, ) | |
| ) | |
| v. ) | September 16, 2022 |
| ) | |
| RICHARD JAMES COTTRELL, JR., ) | |
| *Defendant-Appellant*. ) | |

### MEMORANDUM OF DECISION REVERSING AND REMANDING BANKRUPTCY COURT'S GRANT OF SUMMARY JUDGMENT

Sarala V. Nagala, United States District Judge.

Defendant-Appellant Richard James Cottrell, Jr. ("Appellant") has brought this appeal from a decision of the U.S. Bankruptcy Court for the District of Connecticut, claiming that the Bankruptcy Court erred in granting summary judgment in favor of Plaintiff-Appellee Georgia Cottrell ("Appellee"). Specifically, Appellant contends that the Bankruptcy Court improperly found that his debt to Appellee was nondischargeable under Chapter 5 of the U.S. Bankruptcy Code, 11 U.S.C. § 523(a)(2)(A).

Appellant seeks an order reversing the Bankruptcy Court's judgment, arguing that there are genuine issues of material fact that should have precluded the Bankruptcy Court from finding as a matter of law that his debt was traceable to fraudulent transfers he executed prior to his divorce from Appellee. Appellee contends that no genuine issues of material fact remain and that the Bankruptcy Court's grant of summary judgment is supported by the record that was before it.

For the reasons described below, the Court agrees with Appellant. The judgment of the Bankruptcy Court is REVERSED, and this action is REMANDED for further proceedings consistent with this ruling.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The factual and procedural history of this case is lengthy, but important to resolution of the present appeal. Appellant and Appellee, formerly spouses, divorced in 2009. The pending dispute arises from a judgment of the Connecticut Superior Court dissolving the parties' marriage. *See* ECF No. 15-1 at 98–108. In that judgment, the Superior Court found that Appellant had fraudulently conveyed his interests in certain real property in anticipation of the parties' divorce. Appellant appealed the judgment of the Superior Court, and the Connecticut Appellate Court affirmed. *See Cottrell v. Cottrell*, 133 Conn. App. 52 (2012). In January of 2017, Appellant filed for bankruptcy. In the bankruptcy proceedings, Appellee brought an adversary complaint to determine dischargeability of certain debts. The present appeal pertains to the Bankruptcy Court's determination that Appellant's obligation to pay Appellee $200,000 pursuant to the Superior Court's judgment is a nondischargeable debt.

### A. Connecticut Superior Court Decision

The Connecticut Superior Court dissolved the parties' marriage on November 17, 2009. ECF No. 15-1 at 98–108. The Superior Court noted that Appellant entered the parties' marriage "owning 'quite a bit of stock'; a home in New Milford, and condominiums which he had purchased with his savings and earnings." *Id.* at 100. Appellee owned no property when the parties married, and she stopped working after one year of marriage because Appellant told her that he "would take care of her" and she "trusted him to do so." *Id.* at 100–01.

In its dissolution judgment, the Superior Court found that Appellant had fraudulently transferred his interests in certain real property. Specifically, in late 2005, when troubles in the parties' marriage had already arisen, Appellant consulted with his attorney regarding a "'proposal' for an agreement." *Id.* at 101. In a letter to his attorney, Appellant stated, "I don't want [Appellee] to be able to come back a year from now and decide she is going to take me to court." *Id.* Although the proposed agreement was not executed before the dissolution of the parties' marriage, Appellant's attorney prepared deeds for Appellant. *Id.* Appellant executed the deeds, which transferred a partial interest in certain condominiums to his children and himself as joint tenants with right of survivorship "for $1.00 and other valuable consideration." *Id.* The Superior Court found the reasons Appellant provided for transferring his interests in these properties—that he believed Appellee had car accidents on account of an alcohol problem, for which he would be held liable—to be unpersuasive. *Id.*

Applying Connecticut law, the Superior Court found that Appellant's property transfers to his children were "fraudulent conveyances by clear and convincing evidence because there was insufficient consideration and because they deprive the court of utilizing sufficient resources to effectuate an equitable distribution." *Id.* at 102. The Superior Court reasoned that "the deeds were executed in anticipation of the dissolution action since the parties' marriage was troubled at that time," and that Appellant "was seeking to prevent his wife from obtaining an interest in the real property in the event of a dissolution." *Id.* Accordingly, the Superior Court "set[] aside the transfers to the children and restore[d] full undivided interest in the real properties to [Appellant]." *Id.* at 102–03.

The Superior Court thereafter issued a series of orders addressing, among other things, alimony, child support, insurance obligations, and distribution of marital property. *Id.* at 104–08.

3

The Superior Court stated that it "carefully considered the criteria set forth in Connecticut General Statutes §§ 46b-56, 46b-56a, 46b-56c, 46b-62, 46b-81, 46b-82, 46b-84 and 46b-86 [which are various provisions of Connecticut law pertaining to dissolution of marriage] in reaching the decisions reflected in the orders." *Id.* at 100. These orders included a section titled "Real Property," in which the Superior Court stated: "(1) [Appellant] shall buy [Appellee's] legal and equitable interest in the marital properties within ninety (90) days of this judgment by paying her $200,000 by certified check or bank check. (2) He shall retain possession of [another property]. (3) [Appellant] shall retain his interest in the real properties." *Id.* at 107.

      B.  <u>Connecticut Appellate Court Decision</u>

Appellant appealed the Connecticut Superior Court's dissolution judgment. On appeal, the Connecticut Appellate Court considered, among other things, Appellant's argument that the Superior Court improperly determined that he fraudulently conveyed his interest in several properties in order to prevent the properties from being subject to claims of equitable distribution. *Cottrell*, 133 Conn. App. at 53. Specifically, Appellant argued that "the [Superior Court's] determination was made on the basis of its 'flawed chronology of events,'" namely, Appellant claimed that he had not consulted an attorney about obtaining a divorce until long after he had transferred the properties at issue to his children. *Id.* at 63. The Appellate Court found that the Superior Court's factual finding that the marriage was troubled in September 2005, when the transfers were made, was supported by the record and was not clearly erroneous. *Id.* at 64–65. The Appellate Court then affirmed the judgment of the Superior Court. *Id.* at 65.

      C.  <u>The First Bankruptcy Court Decision</u>

In January of 2017, Appellant filed for bankruptcy. *See* ECF No. 15-1 at 186–87. In May of 2018, Appellee filed a complaint that, among other claims, asserted in Count Four that

4

Appellant's "$200,000 debt obligation to [Appellee] pursuant to the Marital Dissolution Decision (the 'Divorce Obligation') is based in whole or in substantial part on [Appellant's] intentionally fraudulent conveyances" and that that debt "arises from, results from, is traceable to, or is on account of, [Appellant's] actual fraud," within the meaning of 11 U.S.C. § 523(a)(2)(A). *Id.* at 52–53. Accordingly, Appellee requested that the $200,000 debt be excepted from discharge pursuant to § 523(a)(2)(A). *Id.* at 54. In his answer, Appellant denied all allegations specific to Count Four. *Id.* at 60.

Appellee subsequently filed a motion for partial summary judgment with respect to Count Four. *See In re Cottrell*, No. 17-50057 (JAM), 2019 WL 575644, at *1 (Bankr. D. Conn. Feb. 12, 2019) (hereafter the Bankruptcy Court's "First Decision"). Appellant opposed Appellee's motion and filed a cross-motion for summary judgment. *Id.* at *2. After a hearing on the motions, the Bankruptcy Court granted summary judgment as to Count Four in favor of Appellee. *Id.* In doing so, the Bankruptcy Court deemed Appellant's debt resulting from the Superior Court's $200,000 monetary award to be nondischargeable under § 523(a)(2)(A). *Id.* at *9. The Bankruptcy Court based its decision on principles of collateral estoppel, affording the Superior Court's judgment "preclusive effect." *Id.* at *6.

In particular, applying collateral estoppel principles under Connecticut law, the Bankruptcy Court found that the issue of Appellant's fraudulent conveyances was "fully and fairly litigated" and "actually decided" by the Connecticut Superior Court. *Id.* at *6–7. The Bankruptcy Court also found that "the determination that the fraudulent conveyances were made was 'necessary to the [Superior Court's] judgment,' requiring [Appellant] to pay [Appellee] $200,000.00 to 'buy' [Appellee's] legal and equitable interests in the Marital Properties." *Id.* at *7. On this point, the Bankruptcy Court reasoned that, "[i]n the absence of the determination that the fraudulent

5

conveyances were made, the Superior Court Judgment—setting aside the transfers, restoring full undivided interest in the real properties to [Appellant], and ordering [Appellant] to pay $200,000.00 to [Appellee]—could not have been validly rendered." *Id.*  Then, after finding that "the Superior Court's determination that fraudulent conveyances were made is the 'identical' issue to be decided in this adversary proceeding," the Bankruptcy Court concluded that "collateral estoppel applies and [Appellant] is precluded from relitigating the issue of fraud." *Id.* at *7–8.

Having found that principles of collateral estoppel applied to this case, the Bankruptcy Court next discussed the U.S. Supreme Court's decision in *Husky International Electronics, Inc. v. Ritz*, 578 U.S. 356, 136 S. Ct. 1581 (2016).  First Decision, 2019 WL 575644, at *8.  The Bankruptcy Court explained that, in *Husky*, the Supreme Court held that, for purposes of § 523(a)(2)(A), "actual fraud" includes fraudulent conveyance schemes.  *Id.* at 365.  The Bankruptcy Court then concluded that, in this case, "the fraudulent conveyances meet the definition of 'actual fraud' and the Dissolution Action debt traceable to the fraudulent conveyances is nondischargeable under § 523(a)(2)(A)." *Id.*

D.  The District Court's Remand Order

Appellant appealed the Bankruptcy Court's grant of summary judgment.  On appeal, the district court (Bryant, J.) issued a memorandum of decision remanding the Bankruptcy Court's judgment for an articulation of factual findings.  Memorandum of Decision, *In re Cottrell*, No. 3:19-cv-250-VLB (D. Conn. Sept. 21, 2020), ECF No. 32 (hereafter "Remand Order").  Judge Bryant stated that, "[a]fter reviewing the pleadings and the record, the Court finds no facts or reasoning to support the conclusion that the divorce obligation relates to actual fraud; let alone whether the obligation is a debt obtained by actual fraud as required under section 523(a)(2)(A)." *Id.* at 8.  She explained:  "The Bankruptcy Court, in its decision, simply states that the divorce

6

obligation 'debt [is] traceable to the fraudulent conveyances . . . .'  But the Bankruptcy Court does not articulate how this is so.  And the answer is not so obvious that it does not warrant further fact finding." *Id.* (alterations in original).

The Remand Order further explained that "[b]efore the Bankruptcy Court could have determined whether the Superior Court judgment was to be afforded collateral estoppel effect, it must have determined the reason for the original $200,000 award." *Id.* at 9.  Judge Bryant indicated that the Superior Court's reason for granting the monetary award "is not apparent from the record and could have been for one of several possible reasons," including that the award was:

> (i) Plaintiff's share of the marital property after the fraudulent transfers were set aside, (ii) partially for Plaintiff's share of the marital property after the fraudulent transfers were set aside and partially as punitive damages against the Defendant for his wrongful conduct, (iii) entirely punitive damages for Defendant's wrongful conduct or (iv) a share in the equity in the transferred property if the transfers were not voided.

*Id.* at 9.  She then noted that "[t]he Bankruptcy Court did not state which of the above apply here or if they apply at all." *Id.*  The Remand Order further explained that § 523(a)(2)(A)'s "reach is not so wide to make all debts nondischargeable simply because the debtor engaged in fraudulent conduct." *Id.*  Rather, "the debt must be traceable to the fraudulent conveyances to be nondischargeable." *Id.* (citing *Husky Int'l Elecs., Inc.*, 136 S. Ct. at 1589).  Judge Bryant further emphasized that "[t]he question here is not whether a fraudulent transfer occurred but rather whether the monetary award is traceable to the fraudulent transfer." *Id.* at 11.

Moreover, Judge Bryant noted that "the Bankruptcy Court did not explain how the $200,000 debt was traceable to the fraudulent conduct, particularly where the Superior Court indicated that it set aside the fraudulent conveyances before issuing its judgment." *Id.* at 9.  She reasoned that "[a]n equitable distribution of real property, even in a case where a party is found to have tried to fraudulently convey real property, does not by itself fall within the purview of section

7

523(a)(2)(A)" because "section 523(a)(2)(A) requires a showing that the debt sought to be deemed nondischarge[able] is obtained by actual fraud." *Id.* at 10. As a result, Judge Bryant noted, "if the debt ($200,000 judgment) was obtained by equitable distribution of marital property, it clearly would not fall within section 523(a)(2)(A)." *Id.*

Because the Bankruptcy Court's decision did not articulate how the $200,000 judgment was traceable to the fraudulent conveyances, Judge Bryant remanded the case "in order to permit the Bankruptcy Court to articulate its finding." *Id.* at 8.

### E. The Bankruptcy Court's Second Decision

On remand, the Bankruptcy Court issued a memorandum of decision articulating its findings. *See In re Cottrell*, No. 17-50057 (JAM), 2021 WL 261378 (Bankr. D. Conn. Jan. 21, 2021) (hereafter the Bankruptcy Court's "Second Decision"). The Second Decision reaffirmed that the Bankruptcy Court had granted summary judgment in favor of Appellee "[b]ased upon the doctrine of collateral estoppel." *Id.* at *1. The Bankruptcy Court explained that its First Decision was based on the following findings of the Superior Court:

- Appellant and Appellee submitted sworn financial affidavits to the Superior Court at the time of the dissolution.

- Appellant's sworn financial affidavit listed his partial interests in certain real properties he transferred to his five-year-old and three-year-old children, but listed no ownership interest in the marital home.

- Appellant's proffered explanation for transferring his interests in the real properties to his children was unpersuasive.

- The fraudulent conveyances were made with the intent to prevent Appellee from obtaining an interest in the real properties in the event of a dissolution.

- Appellant's transfer of the interests in the real properties constituted fraudulent conveyances because there was "insufficient consideration" for the conveyances and because the conveyances deprived the court of "utilizing sufficient resources to effectuate an equitable distribution."

8

- Appellant's sworn financial affidavit submitted at trial listed his real estate interests, including his partial interests in the real properties conveyed to his children, as having a value of $147,573, which the Superior Court concluded was "not sufficient to effectuate an equitable distribution of assets owned during the marriage."

- The Superior Court ordered Appellant to "buy" Appellee's interests in the fraudulently conveyed properties "within ninety (90) days of this judgment by paying her $200,000 by certified check or bank check."

- The Superior Court found that Appellant purchased the real properties prior to marrying Appellee, and that before fraudulently conveying the real properties, he was the sole owner of those properties.

- Appellant fraudulently conveyed the real properties "in anticipation of the dissolution action since the parties' marriage was troubled at that time."

- Appellant, in executing the deeds to his children, "was seeking to prevent his wife from obtaining an interest in the real property in the event of a dissolution."

- The fraudulent conveyances were made "without consideration."

*Id.* at *2.

The Bankruptcy Court stated that "[w]hile it is possible that the Superior Court's reason for imposing the Dissolution Action debt could fit into one or more of the scenarios the Remand Order posits, the Superior Court Judgment directly ties [Appellant's] obligation to pay [Appellee] $200,000 to the real properties he fraudulent[ly] conveyed but failed to include in his sworn financial affidavit." *Id.* The Second Decision emphasized that "the Superior Court Judgment set aside the fraudulent conveyances, returned the interests in the real properties to [Appellant], and simultaneously ordered [Appellant] to pay [Appellee] $200,000 for her legal and equitable interests in the real properties." *Id.* Based on these findings, the Bankruptcy Court found that Appellant's debt "is traceable to [his] fraudulent conveyances." *Id.* The Second Decision also included a discussion regarding why Appellant's debt was "obtained by actual fraud" pursuant to the U.S. Supreme Court's holding in *Husky International Electronics, Inc. See id.* at *2–3. This appeal followed.

## II.     LEGAL STANDARD

The Court has jurisdiction over this appeal pursuant to 28 U.S.C. § 158(a)(1). In bankruptcy appeals, the district court reviews the bankruptcy court's factual findings for clear error and its conclusions of law *de novo*. *In re Charter Commc'ns, Inc.*, 691 F.3d 476, 482–83 (2d Cir. 2012) (citing Fed. R. Bankr. P. 8013). A decision of the Bankruptcy Court granting summary judgment in favor of appellee is reviewed *de novo*. *In re Hultman*, No. CIV. 301CV1186PCD, 2002 WL 32173567, at *1 (D. Conn. Sept. 27, 2002) (citing *In re Treco*, 240 F.3d 148, 155 (2d Cir. 2001)). "Such a decision will be upheld if, viewing the record in the light most favorable to the non-movant, there is no genuine disputed issue of material fact." *Id.*

## III.    DISCUSSION

Parties filing for bankruptcy are generally entitled to a "fresh start," meaning "a discharge 'from all debts that arose before the date of the order for relief.'" *In re Snyder*, 939 F.3d 92, 101 (2d Cir. 2019). The general rule of dischargeability, however, has exceptions, as a "fresh start may be granted only to 'the honest but unfortunate debtor.'" *Id.* (quoting *Grogan v. Garner*, 498 U.S. 279, 287 (1991)). "The statutory provisions governing nondischargeability reflect a congressional decision to exclude from the general policy of discharge certain categories of debts—such as child support, alimony, and certain unpaid educational loans and taxes, as well as liabilities for fraud" because "Congress evidently concluded that the creditors' interest in recovering full payment of debts in these categories outweighed the debtors' interest in a complete fresh start." *Id.* (citing *Grogan*, 498 U.S. at 287).[1]

---

[1] A party objecting to the discharge of a debt under 11 U.S.C. § 523(a)(2)(A) has the burden of proving, by a preponderance of the evidence, that the debtor is not entitled to a discharge of the debt. *In re Maletta*, 159 B.R. 108, 111 (Bankr. D. Conn. 1993) (citing Fed. R. Bankr. P. 4005 and *Grogan*, 498 U.S. 279). The issue of nondischargeability is "a matter of federal law governed by the terms of the Bankruptcy Code." *Grogan*, 498 U.S. at 284.

10

One category of nondischargeable debt is found under 11 U.S.C. § 523(a)(2)(A), which provides, in relevant part, that:

> (a) A discharge under section 727 . . . does not discharge an individual debtor from any debt . . . (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition.

A fraudulent conveyance can be a basis for nondischargeability under § 523(a)(2)(A). *See Husky Int'l Elecs., Inc.*, 578 U.S. at 365. For the debt to be nondischargeable, it must be "traceable" to the fraudulent conveyance. *Id.* (recognizing that "at least sometimes," when a debt is "'traceable to' a fraudulent conveyance," the debt could be nondischargeable).[2]

Appellant does not dispute the Bankruptcy Court's application of collateral estoppel to find that he committed "actual fraud" under § 523(a)(2)(A) through the fraudulent conveyances. Indeed, as Judge Bryant noted in the Remand Decision, "[t]he question here is not whether a fraudulent transfer occurred but rather whether the [$200,000] monetary award is traceable to the fraudulent transfer." Remand Decision at 11. Accordingly, the question presented by the present appeal is: did the Bankruptcy Court properly find that there was no genuine issue of material fact as to whether the Superior Court's $200,000 award in favor of Appellee was traceable to Appellant's fraudulent transfers? The Court cannot conclude that it did, because the connection between the $200,000 judgment and Appellant's fraudulent transfers remains far from apparent, even after the Bankruptcy Court's articulation on remand.

---

[2] In lieu of the traceability standard set forth in *Husky International Electronics*, Appellee requests that the Court employ a standard set forth in *Cohen v. de la Cruz*, 523 U.S. 213, 215 (1998), providing that a debt can be excepted from discharge under § 523(a)(2)(A) if it is "on account of" fraud. *Cohen* predates *Husky International Electronics* by several years. The Second Circuit has not elaborated on the definition of "traceable" in this context. In any event, for the reasons discussed in this ruling, the Court cannot find that the $200,000 award was either traceable to or "on account of" fraud.

In its First Decision, the Bankruptcy Court conducted very little analysis on the question of traceability. Instead, it implied that the traceability question was resolved by the Superior Court's finding that Appellant executed fraudulent conveyances in order to prevent Appellee from obtaining an interest in the transferred properties:

> The Superior Court unequivocally determined by clear and convincing evidence that [Appellant] effectuated the fraudulent conveyances with the intent of hindering [Appellee] from obtaining her interest in the Martial Properties. *See* Superior Court Judgment at 4. Therefore, the fraudulent conveyances meet the definition of "actual fraud" *and the Dissolution Action debt traceable to the fraudulent conveyances is nondischargeable* under § 523(a)(2)(A).

First Decision, 2019 WL 575644, at *4 (emphasis added). But the Bankruptcy Court provided no reasoning regarding why this was so.

Because the Bankruptcy Court failed to articulate the reasons why it found the $200,000 debt traceable to the fraudulent conveyances, Judge Bryant remanded the case after the first appeal for further articulation of its conclusion. Indeed, Judge Bryant noted that the $200,000 amount could represent: (i) Appellee's share of the marital property after the fraudulent transfers were set aside, (ii) an amount partially determined by Appellee's share of the marital property after the fraudulent transfers were set aside and partially as punitive damages against Appellant for his wrongful conduct, (iii) entirely punitive damages for Appellant's wrongful conduct, or (iv) a share in the equity in the transferred property if the transfers were not voided. Remand Order at 9. Judge Bryant explained that the first of these scenarios would not warrant a finding of traceability, noting that "[a]n equitable distribution of real property, even in a case where a party is found to have tried to fraudulently convey real property, does not by itself fall within the purview of section 523(a)(2)(A)." *Id.* at 10. By contrast, "if it was obvious that the Superior Court judgment [was] based on punitive damages" imposed because of Appellant's fraudulent transfers, Judge Bryant "would have been inclined to affirm" the Bankruptcy Court's decision on traceability. *Id.* at 9.

Given that any of the scenarios listed above was possible, Judge Bryant allowed the Bankruptcy Court an opportunity to articulate how it reached the conclusion that the debt was traceable to Appellant's fraud.

But the Bankruptcy Court's Second Decision similarly fails to demonstrate that Appellee is entitled to summary judgment on the question of traceability. In its Second Decision, the Bankruptcy Court did not go beyond the Superior Court judgment to articulate how Appellant's $200,000 debt is traceable to his fraudulent conveyances. Instead, in its Second Decision, the Bankruptcy Court simply summarized various findings from the original Superior Court decision, including that the fraudulent conveyances were made with the intent to prevent Appellee from obtaining an interest in the real properties in the event of a dissolution and that Appellant's real estate assets listed in his sworn financial affidavit were "not sufficient to effectuate an equitable distribution of assets owned during the marriage." Second Decision, 2021 WL 261378, at *2.

As Judge Bryant previously noted, however, the Superior Court decision did not explain in any fashion how it arrived at the $200,000 figure. *See* Remand Order at 9 (the Superior Court's reason for granting the monetary award "is not apparent from the record"). The Superior Court decision found that Appellant had engaged in the fraudulent transfers and then "set[] aside the transfers to the children and restore[d] full undivided interest in the real properties to [Appellant]." ECF No. 15-1 at 102–03. Then, four pages later, it ordered that Appellant "shall buy [Appellee's] legal and equitable interest in the marital properties within ninety (90) days of this judgment by paying her $200,000 by certified check or bank check." *Id.* at 107. Although the fraudulent transfer determination and the money judgment order appear in the same decree from the Superior Court, they are disconnected from one another in the Superior Court's ruling, and the Superior Court provided no explanation linking the $200,000 figure to the fraudulent transfer determination.

13

Notably absent from the "ORDERS" subsection in which the $200,000 award appears is any mention of Appellant's fraudulent conveyances or any language concerning penalties or fault on the part of Appellant. Nor did the Superior Court articulate how it calculated the $200,000 figure based on the financial information before it, which could have helped explain whether the award was connected to the fraudulent transfers. The Superior Court's decision thus does not sufficiently link the $200,000 judgment to the fraudulent transfers, and thus cannot independently provide a basis for the Bankruptcy Court's traceability finding.

The Bankruptcy Court itself acknowledged that it was "possible that the Superior Court's reason for imposing the Dissolution Action debt could fit into one or more of the scenarios the Remand Order posits," but summarily concluded that the Superior Court judgment "directly ties" the $200,000 to "the real properties [Appellant] fraudulently conveyed but failed to include in his sworn financial affidavit." Second Decision, 2021 WL 261378, at *2. The Court does not agree that the Superior Court's judgment "directly ties" the $200,000 judgment to the fraudulent conveyances, as it does not anywhere indicate that the Superior Court awarded Appellee $200,000 *because* Appellant committed the fraudulent conveyances. Ultimately, neither the Superior Court judgment nor either of the Bankruptcy Court's decisions foreclose any of the possibilities Judge Bryant's decision discussed.[3]

---

[3] Notably, the Superior Court stated that it "carefully considered the criteria set forth in Connecticut General Statutes § . . . 46b-81," which pertains to the Superior Court's authority to assign property and transfer title at the time it enters a decree dissolving a marriage. ECF No. 15-1 at 100. Thus, looking to the Superior Court's judgment alone, it is possible that the $200,000 award was merely based on the Superior Court's authority to distribute property at the time of the parties' divorce. *See also id.* at 102 (stating that the $147,573 listed on Appellant's sworn financial affidavit in the dissolution action was "not sufficient to effectuate an equitable distribution of assets owned during the marriage"). Indeed, the Connecticut Practice Series later cited the Connecticut Appellate Court's decision in this case as holding that Appellant's "transfers of his ownership interests in several parcels of real property to his children constituted fraudulent conveyances, *as would support including parcels as marital property subject to distribution*." Fraudulent transfers and property transferred while action is pending, 7 Conn. Prac., Family Law & Prac. § 26:21 (3d ed.) (emphasis added).

14

Because the Bankruptcy Court relied exclusively on the Superior Court judgment, the only way for the Bankruptcy Court to reach its conclusion awarding summary judgment to Appellee was to draw inferences in favor of Appellee when interpreting the Superior Court's decision. For instance, in concluding that the Superior Court decision directly tied the $200,000 award to the fraudulent transfers, the Bankruptcy Court inferentially rejected the other possible scenarios posited by the Remand Order, at least one of which would have precluded a finding of traceability. This constituted an impermissible inference against Appellant, and in favor of Appellee. At summary judgment, it was improper for the Bankruptcy Court to draw such inferences against Appellant, the non-movant. *Sec. Ins. Co. of Hartford v. Old Dominion Freight Line Inc.*, 391 F.3d 77, 83 (2d Cir. 2004) ("[I]n assessing the record to determine whether there is a genuine issue as to a material fact, the court is required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought.").

It is possible that, at a subsequent stage of this litigation, the Bankruptcy Court—or, if appropriate, a jury—could find that the $200,000 award was sufficiently traceable to the fraudulent transfers. For instance, there may be financial or other records about the values of the properties at issue that were before the Superior Court that could help explain why that court chose to award Appellee the specific amount of $200,000. Examination of such records, or other evidence beyond the Superior Court judgment, could justify a finding of traceability later in this case. But the Superior Court judgment alone simply does not make the basis for the $200,000 award clear enough to justify summary judgment. *See In re Wong*, 802 F. App'x 280, 283 (9th Cir. 2020) (memorandum disposition) (where plaintiffs in a bankruptcy appeal failed to show, and an earlier state court judgment did not specify, what portion of the state court judgment was traceable to fraudulent transfers, the debt resulting from that judgment was dischargeable).

In sum, when Judge Bryant initially reviewed the record, including the Superior Court judgment, she found that it was unclear whether the Superior Court awarded Appellee $200,000 on the basis of fraud. On remand, the Bankruptcy Court articulated its findings using only the same Superior Court judgment. Even with the benefit of the Bankruptcy Court's articulation of its findings, this Court must reach the same conclusion as Judge Bryant and find that genuine issues of material fact remain as to the traceability of Appellant's $200,000 debt to his fraudulent conveyances. As a result, genuine issues of material fact remain with respect to whether Appellant's debt is nondischargeable, and the Bankruptcy Court erred in granting summary judgment in favor of Appellee.

### IV.   CONCLUSION

For the reasons described herein, the Bankruptcy Court's grant of summary judgment in favor of Appellee is REVERSED. This action is REMANDED to the Bankruptcy Court for further proceedings consistent with this ruling.

**SO ORDERED** at Hartford, Connecticut, this 16th day of September, 2022.

 /s/ Sarala V. Nagala
SARALA V. NAGALA
UNITED STATES DISTRICT JUDGE